UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMIKA HENDERSON,

     Plaintiff,

v.                                        Case No:   2:13-cv-723-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

---

## <u>OPINION AND ORDER</u>

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on October 15, 2013.

Plaintiff, Tamika Henderson seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA") denying her claim for Supplemental Security Income

benefits.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as

"Tr." followed by the appropriate page number), and the parties filed legal memoranda in support

of their positions, and Plaintiff filed a Reply Brief (Doc. 25). .   For the reasons set out herein, the

decision of the Commissioner is **reversed and remanded** pursuant to §205(g) of the Social

Security Act, 42 U.S.C. §405(g).

### I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.   Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.   The

impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.   Procedural History

On July 23, 2009, Plaintiff filed an application for supplemental security income asserting a disability onset date of January 1, 2009. (Tr. p. 91, 143). Plaintiff's application was denied initially on January 8, 2010, and upon reconsideration on February 26, 2010.   (Tr. p. 115-118, 122-123).   A hearing was held before Administrative Law Larry J. Butler ("ALJ") on June 24, 2011.  (Tr. p. 58-72).     The ALJ issued an unfavorable decision on July 14, 2011 (Tr. p. 96-107). On September 8, 2011, the Appeals Council entered an Order which remanded the matter to the ALJ for further consideration on a variety of issues.   (Tr. p. 109-11).

On remand, the ALJ held a second hearing on February 15, 2012.   (Tr. p. 73-88), and issued an unfavorable decision on June 15, 2012. (Tr. p. 8-24).   The Appeals Council denied Plaintiff's request for review on August 27, 2013.   (Tr. p. 1-4).   The Plaintiff filed a Complaint (Doc. 1) in the United States District Court on October 15, 2013.   This case is now ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (See, Doc. 17).

### C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.   *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   An ALJ must

---

1 Unpublished opinions may be cited as persuasive on a particular point.   The Court does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or after January 1, 2007 is expressly

determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).   The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.   *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that at step one, Plaintiff had not engaged in substantial gainful activity since July 23, 2009, the application date.   (Tr. p. 13).   At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: depressive/dysthymic disorder and borderline intellectual functioning, citing 20 C.F.R. §416.920(c). (Tr. p. 13).   At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. p. 13).   At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff has moderate limitations on understanding, remembering and carrying out detailed and complex job instructions, resulting in Plaintiff being able to perform these work-related activities occasionally during the course of an 8-hour workday. (Tr. p. 15).   Plaintiff has no limitations on understanding, remembering, or carrying out simple instructions and limitations on socialization or adaptation to workplace changes.   (Tr. p. 15). The ALJ found Plaintiff has no past relevant

permitted under Rule 31.1, Fed. R. Ap. P.   Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

work and is considered a younger individual on the date of the application, with at least a high school education.   (Tr. p. 19).   Plaintiff has no transferability of job skills.   (Tr. p. 19).   Based upon Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.   (Tr. p. 19).   The ALJ concluded that Plaintiff is not under a disability since July 23, 2009.   (Tr. p. 20).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises one issue on appeal.  As stated by Plaintiff is it that the ALJ failed to properly apply or discount Listing 12.05(C).   Plaintiff asserts that on remand the Appeals Council required the ALJ to further evaluate the impact of Plaintiff's IQ scores in the record with Listings 12.02 and 12.05.   Plaintiff contends that the Appeals Council noted that Plaintiff had a valid full scale IQ score of 70 from March 2008, and a valid performance IQ score of 64 with a full scale IQ score of 68 from October 1998.   Plaintiff argues that the ALJ failed to find at step three that Listing 12.05 is met by Plaintiff when he found that Plaintiff's severe impairment of dysthymic/depressive disorder does not impose additional and significant work related limitations on functioning.   The Commissioner argues that substantial evidence supports the ALJ's finding at step three that Plaintiff did not satisfy all of the criteria for 12.05(c) when the ALJ found that Plaintiff's mental impairments of dysthymic/depressive disorder did not impose additional and significant work-related limitations different than those limitations found by Plaintiff's diagnosis of borderline intellectual functioning.

At step three, to meet the requirements of a listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing."   20 C.F.R. § 404.1525(d). The burden is on Plaintiff to show that she meets the Listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).   If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment.   *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Wilson v. Barnhart*, 284 F.3d 1219, 1224

(11th Cir. 2002) (citing 20 C.F.R. § 1525(a) – (d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id*. (citing 20 C.F.R. § 404.1526(a)).

> Listing 12.05 provides in part as follows:
>
> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.[2]
>
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05.

The structure of Listing 12.05 differs from other mental disorder listings by containing four sets of criteria, and a plaintiff must satisfy the diagnostic description and one of the four sets of criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.

In the instant case, the ALJ determined that Plaintiff satisfied the diagnostic description and Listing 12.05, Subsection C that requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."   20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05C.   However, the ALJ determined that Plaintiff failed to meet the criteria of Listing 12.05C for the following reason:

> although the claimant obtained full scale score of 70 in March 2008, as noted by the Appeals Council, she does not have any severe physical impairment, and her "other mental impairment" of dysthymic/depressive disorder, does not impose "additional and significant work-related limitations on functioning."   Rather, this

---

[2] On August 1, 2013, the Social Security Administration changed the terminology in Listing 12.05 from "mental retardation" to "intellectual disability," but this change in terms does not "affect the actual medical definition of the disorder or available programs or services."   *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 982 n.2 11th Cir. 2013)(citing 79 Fed. Reg. 46,499, 46,501, later codified in 20 C.F.R. pt. 404, subpt. P, app.1).

disorder contributes to some degree to a limitation on understanding, remembering, and carrying out detailed instructions, the same limitation which is caused in part by the claimant's borderline intellectual functioning.  These two impairments in conjunction justify a finding of moderate limitations on understanding, remembering and carrying out detailed instructions, as discussed below, but there is not support for any additional limitations on work-related functioning, much less "significant" limitations.   Thus listing 12.05C is not met.

(Tr. p. 14). The ALJ found that Plaintiff met the criteria for the first prong of Listing 12.05C, by having a valid verbal, performance, or full scale IQ score of 60 through 70, and met the criteria of the second prong by finding at step two that she had severe impairments of depressive/dysthymic disorder and borderline intellectual functioning. [3]  However, the ALJ then determined that Plaintiff's depressive/dysthymic disorder did not cause additional and significant work-related limitations other than those caused by Plaintiff's borderline intellectual functioning.

The ALJ at step two found that Plaintiff had the severe impairments of depressive/dysthymic disorder and borderline intellectual functioning citing 20 C.F.R. §416.920(c).   At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

---

3   The Commissioner argues that Plaintiff does not meet the first criteria of Listing 12.05C because there is no diagnosis of mental retardation.   (Doc. 22, p. 8).   The ALJ found that Plaintiff did meeting the first criteria of Listing 12.05C, and whether the ALJ erred in finding Plaintiff met the first criteria is not an issue before the Court.

The regulations concerning Listing 12.05C are in part as follows:

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in the §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

*Willard v. Colvin*, 2014 WL 1664300, at *5 (N.D. Ala. Apr. 25, 2014) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1200A).   Therefore, the criteria to determine a severe impairment for Listing 12.05C is the same as at step two of the sequential evaluation as both sections cite to 20 C.F. R. 416.920(c) for the definition of "severe". The additional impairment must be determined to be "severe" and cause significant and work-related limitations that are "severe" as defined in the same analysis as step two, and if a plaintiff has no other "severe' impairments other than borderline intellectual functioning then a plaintiff will not meet the 12.05C criteria.

In the instant case at step two, the ALJ found Plaintiff to have the severe impairment of depressive/dysthymic disorder and the severe impairment of borderline intellectual functioning. This finding at step two shows that each of these severe impairments causes more than a minimal reduction in Plaintiff's ability to work.   On its face, the ALJ's finding that Plaintiff has no additional and significant work-related limitations other than her borderline intellectual functioning appears to be in conflict because each severe impairment, including depressive/dysthymic disorder must cause more than a minimal reduction in a plaintiff's ability to work to be classified as "severe".   *See, Brown v. Astrue*, 2011 WL 1885328, at *5 (M.D. Ala. May 18, 2011).

The ALJ relied on a discharge form completed by a nurse in the emergency room on May 17, 2009.  (Tr. p. 15-16).   The ALJ reviewed Plaintiff's emergency room visit where Plaintiff went to the emergency room because she was feeling dizzy and light-headed.  (Tr. p. 15). The ALJ noted that the examination showed Plaintiff to be alert and oriented with clear speech, but fatigued with feelings of hopelessness. (Tr. p. 15).   The ALJ noted that the Plaintiff reported that she had no limitations in performance of activities of daily living, no barriers to learning, her current knowledge was good, and she was discharged to home for self care in a stable condition with a diagnosis of depression. (Tr. p. 15-16).   Based upon this record, the ALJ determined that that Plaintiff

> has a "severe" depressive impairment but in light of the limited symptoms of hopelessness, with no barriers to learning, good knowledge level, and no limitations on activities of daily living, no greater degree of limitation than as determined herein is supported by these records.   The undersigned finds significant the fact that the claimant had no barriers to learning and a good knowledge level, and finds that this evidence shows the claimant is not unable to engage in gainful work activity due to intellectual deficits.

(Tr. p. 16).   This medical record, however was completed by a nurse for discharge purposes from the emergency room.   It is unclear whether Plaintiff stated that she had no barriers to learning, or that her current knowledge level was good. (Tr. p. 327). This form was used to release Plaintiff from the hospital and not used to diagnose or treat Plaintiff.

On November 23, 2009, Plaintiff had a consultative evaluation conducted by Aisha Devera, Psy.D., Postdoctoral Resident under the supervision of Claudia Zsigmond, Psy.D. Dr. Devera deferred Plaintiff's prognosis due to her questionable and inconsistent presentation. (Tr. p. 243). Dr. Devera determined Plaintiff's onset of mood symptoms was sudden and questionable and was unable to make a diagnosis finding that malingering should be ruled out. (Tr. p. 243).   Dr. Devera made a provisional diagnosis of Borderline Intellectual Functioning.   (Tr. p. 243).

The ALJ also relied upon the October 28, 2011 Psychiatric Evaluation of Don Baracskay, M.D. (Tr. p. 16, 332-334). The ALJ stated that he "finds that it would be completely unwarranted to make a finding of disability in this case, where the claimant's own treating physician has clearly indicated that he does *not* consider the claimant unable to engage in gainful work activity, or to have symptoms consistent with an inability to work." (Tr. p. 16). The ALJ found that Plaintiff could benefit from vocational training and had limited prior work history and work skills which do not suggest disability but rather a need for introduction into the world of work. (Tr. p. 16). Dr. Baracskay diagnosed Plaintiff with dysthymic disorder and personality disorder, but not bipolar or psychotic disorder. (Tr. p. 333). Dr. Baracskay does state that

> [i]n terms of the focus on disability, I indicated that I could not clinically support that her symptoms would prevent her from working. There is an irony to her report of depressive symptoms in recent months – that these symptoms were worsened by being denied disability benefits. In fact, she is more likely to improve in overall life functioning with daily structure that comes from work or training. A vocational rehabilitation program should be attempted in earnest. I will include a community support referral as part of her treatment plan.

(Tr. p. 333).

The parties failed to cite to any cases, and the Court found no cases, where an ALJ determined a plaintiff met the first two prongs of the criteria of Listing 12.05C, but then determined that a plaintiff's severe impairments caused no additional and significant work-related limitations other than those caused by borderline intellectual functioning which then lead to a finding of not disabled. The ALJ did not cite to any medical records which sets forth the limitations **solely** caused by Plaintiff's Borderline Intellectual Functioning, and did not cite to any medical records which sets forth the limitations **solely** caused by Plaintiff's diagnosis of depressive/dysthymic disorder. If the ALJ had cited to these types of records, the Court would be able to compare the limitations caused by each of these diagnoses, and determine if the depressive/dysthymic disorder

caused any additional or significant work-related limitations. The ALJ concluded that Plaintiff's depressive/dysthymic disorder caused no additional or significant work-related limitations other than those caused by Plaintiff's borderline intellectual functioning limitations. The Court reviewed the medical records and did not find that any medical source determined that Plaintiff's impairment of depressive/dysthymic disorder caused no additional or significant work-related limitations other than those limitations caused by her borderline intellectual functioning. Given the lack of medical records to support the ALJ's conclusion, the Court is unable to conduct a meaningful judicial review of the ALJ's opinion. *Robinson v. Astrue,* 2009 WL 2386058, at *4 (M.D. Fla. Aug. 3, 2009).

An ALJ may not substitute his own lay medical opinions for that of a doctor's opinions. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). In the instant case, the ALJ determined that Plaintiff met Listing 12.05C for the first criteria of having a full scale IQ score of 70 in March 2008, and met the second criteria of having an additional severe mental impairment of depressive/dysthymic disorder at step two. However, the ALJ concluded that Plaintiff has no additional or significant work-related limitations from her depressive/dysthymic disorder other than those limitations Plaintiff had with her borderline intellectual functioning. The Court recognizes that there are medical records which support a finding of Plaintiff not being under a disability, however, the Court cannot reach that determination based upon the ALJ's analysis. The ALJ's analysis is not supported by medical reports that show that Plaintiff has no additional and significant work-related limitations from depressive/dysthymic disorder. The ALJ's conclusion that Plaintiff's severe impairment of depressive/dysthymic disorder does not impose any additional and significant work-related limitations on functioning is not supported by substantial evidence.

### III. Conclusion

The Court determines that the ALJ erred in finding that the limitations of Plaintiff's severe impairment of depressive/dysthymic disorder did not impose "additional and significant work-related limitations on functioning."

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to consider Plaintiff's severe impairments at step two and the significant and work-related limitations caused by them to determine if Plaintiff meets the Listings. The Commissioner shall consider all of the medical evidence of record and obtain additional medical evidence, if needed.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE** and **ORDERED** in Fort Myers, Florida on March 24, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 12 -